IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARVIN RAAB, | : | CIVIL ACTION |
| | : | NO. 08-4187 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD LANDER, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    August 24, 2010

Before the Court is Defendants' motion for summary judgment as to Plaintiff's fraud, breach of contract, specific performance, accounting, unjust enrichment, and joint venture claims. After consideration of the parties' pleadings and for the reasons set forth below, Defendants' motion for summary judgment will be granted.

I.   **FACTUAL BACKGROUND**

On August 28, 2008, Plaintiff Marvin Raab ("Raab" or "Plaintiff") initiated this action against Defendants Howard Lander ("Lander") and 929 South Street Associates, LP ("929 South St.") (collectively, "Defendants"),[1] alleging that Defendants

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Raab is a citizen of New Jersey, Defendants are citizens of Pennsylvania, and the amount in controversy exceeds

wrongfully withheld profits from him under various counts of fraud, breach of contract, specific performance, accounting, unjust enrichment, and joint venture. Raab avers that the contract entitles him to these profits because he invested $30,000 with Defendants, allegedly in exchange for a long-term interest in the Property. Raab seeks damages in excess of $75,000 in satisfaction of his purported 10% ownership interest in the Property. See Compl. ¶ 42.

The following details the parties' rights and responsibilities under the portions of the Agreement that are in dispute.[2]

---

$75,000. As Defendants reside in this district, venue is appropriate, pursuant to 28 U.S.C. § 1391(a)(1).

[2] Relevant portions of the Agreement are reproduced below.

> Howard Lander . . . is buying a fifty . . . percent interest . . . in the property known as 939 South Street, Philadelphia, Pennsylvania[.] . . .
>
> Raab will be providing a capital investment of [$30,000] to Lander [the "Raab Capital Investment"] to enable Lander to acquire the Lander Interest in the Subject Property[.] . . .
>
> 1. Raab gives the Raab Capital Investment of [$30,000] to Lander for the <u>sole and exclusive purpose</u> to be used by Lander to pay the Lander Down Payment to enable Lander to acquire the Lander Interest in the Subject Property.
>
> 2. The Raab Capital Investment is given contingent upon the existence of the following conditions . . . :
>     b. Lander has a fifty percent interest in the property [the 'Lander Interest'], under any agreement with Berger. . . .

      d.    For and in consideration of the Raab Capital Investment, Raab <u>will receive and [be] entitled to</u> twenty percent (20%) or one-fifth (1/5th) of the Lander Interest in the Subject Property [the '<u>Raab Interest</u>']. . . .

3.  In order to provide <u>security</u> for the Raab Capital Investment, a mortgage in the amount of [$30,000] will be executed by Lander as mortgagor . . . . The mortgage shall be payable to Marvin Raab as mortgagee at six percent (6%) interest per annum ['Raab Mortgage']. . . .
      b.    The purpose of the Raab Mortgage is to secure the <u>Raab Interest</u> in the Lander Interest.
      c.    The Raab Mortgage shall be payable at the time of any refinancing of the Lander Interest or upon any sale of the Lander Interest in the Subject Property.
      d.    The Raab Mortgage shall be executed within a reasonable period of time.

4.  It is further agreed, notwithstanding the provisions of paragraph 3, that <u>when</u> the Lander interest is refinanced which <u>will occur</u> within eighteen (18) months after Lander and Berger close on the Subject Property, <u>then</u> the Raab Capital Interest will be <u>converted in to an interest in a limited partnership</u> which will be established among Lander, Raab and two (2) other investors . . . .
      a.    It is understood that, in any limited partnership, the <u>Raab Mortgage</u> will be a twenty percent (20%) or one-fifth (1/5th) interest in the Lander Interest in the Subject Property. Raab will also have a twenty percent (20%) or one-fifth (1/5th) interest in any limited partnership ['Raab Partnership Interest'] that <u>may be created</u> pursuant to this Investment Agreement . . . .
      b.    The purpose of forming a limited partnership will be to protect the Raab Capital Investment and to provide the means by which Raab will be <u>repaid</u>.
      c.    <u>In the event the limited partnership is formed</u>, Lander will convey his interest in the Subject Property to the limited partnership and make whatever changes are required in all deeds, documents of title, and any other

On July 15, 1996, Raab and Lander entered into a "Preliminary Investment Agreement" ("Agreement"), which provided that Raab would lend Lander $30,000 for the "sole and exclusive purpose" of being used as a portion of Lander's down payment so that he could acquire a 50% interest ("Lander Interest") in a property identified in the Agreement as 939 South Street,[3]

> documents required to effectuate the transfer of the Lander Interest, as an individual, to this limited partnership and to establish the Raab Partnership Interest.
>
> 5. It is agreed that the proposed limited partnership <u>will be formed</u> at the time of any refinancing of the Subject Property: . . . .
>     c. <u>If</u> the limited partnership <u>must be formed</u>, Lander shall be responsible for undertaking the costs and expenses of creating this limited partnership.
>
> 6. <u>If</u> at any time prior to the forming of a limited partnership, Lander sells, assigns, transfers, conveys, or <u>refinances</u> the Subject Property or the Lander Interest <u>then</u> Raab shall receive the return of the Raab Capital Interest plus twenty percent (20%) of any profit Lander makes on the Lander Interest."

<u>See</u> Agreement (emphasis added).

---

[3] Due to a drafting error, the Agreement improperly identifies the location of the Property as 939 South Street. However, the parties' pleadings and the name of the co-defendant and title owner of the Property (929 South Street Associates) indicate that the location is in fact 929 South Street. Currently, a Whole Foods grocery store leases the Property under a long-term lease, presumably leading to all or part of the profits in which Raab claims to have an ownership interest. <u>See</u> Pl.'s Opp'n 13.

-4-

Philadelphia, Pennsylvania ("Property"). See Compl. ¶¶ 7-9. In order to ensure repayment of the $30,000 loan, the Agreement provided for a mortgage at which Lander would repay the $30,000 at a 6% interest rate per annum or, if unpaid within eighteen months, in the form of an ownership interest and limited partnership upon refinancing. Four days after the Agreement was executed, Lander used Raab's $30,000 as part of the $90,000 down payment to acquire the Property.

On April 2, 2001, Lander sent Raab a check in the amount of $45,000[4] with "Repayment Fresh Fields Loan"[5] in the

---

[4] In his pleadings, at times, Raab mistakenly refers to the check being in the amount of $40,000. However, a copy of the check provided to the Court clearly indicates that the amount was $45,000. See Defs.' Mot. Summ. J. Ex. G. Further, Defendants aver and Raab testified that the amount $45,000 refers to repayment of the $30,000 plus interest and legal fees. See Defs.' Mot. Summ. J. Ex. F, Raab Dep. 279:7-280:5 ("Q: I understand from your testimony today that you have some background in tax and accounting. What I want — you're not an expert here, I just want to know your understanding of how you treated those funds. So with respect to your reporting obligations to government authorities, how did you treat — what was your understanding of how you treated that $45,000? . . . . A: It was my distribution of ---- based on my capital investment. I had basis, so I didn't need to report any income. Q: And what made up the basis? A: The basis was my initial $30,000, some legal fees and any loans that the partnership had.").

[5] Though "Fresh Fields" appears to be a reference to the Property, Raab asserts that nothing in the record supports the inference that "Fresh Fields" is the same as "Whole Foods." See Pl.'s Opp'n 13; but see Whole Foods, http://www.wholefoodsmarket.com/company/history.php#6 (last visited July 8, 2010) (stating that Whole Foods and Fresh Fields located in the East Coast (specifically, Philadelphia) entered into a merger in 1996).

-5-

memo line.  See Defs.' Reply 1-2; see also Raab Dep. 226:16-19.
In his deposition testimony, Raab stated that he called Lander to inquire as to the meaning of the words on the memo line and, following this call, Raab deposited the $45,000 check into his personal bank account.[6]  See Raab Dep. 229:9-231:6.

In support, Raab avers that the Agreement made him a part owner of the Property because in exchange for the $30,000 down payment, Raab was to receive 20% of Lander's 50% share ("Lander Interest") that would result in a 10% interest in the entire Property.  Specifically, Raab argues that, according to ¶ 4 of the Agreement (reproduced in note 2, supra), Lander was supposed to refinance Raab's interest in the Property within eighteen months (i.e., January 15, 1998), at which time Raab's interest was to be realized and a limited partnership among

---

[6]     Here, the parties dispute Raab's understanding of the check's purpose.  According to Raab, the check was not a repayment of his $30,000 and, by depositing the check into his personal bank account, he did not extinguish his alleged 10% interest in the Property.  In support, Raab argues that he did not believe the $45,000 check affected his 10% interest in the Property because the memo line did not say "repayment with interest" and, according to Raab's deposition testimony, Raab told Lander during the telephone conversation that he was an owner in the property, to which Lander replied, "I understand."  See Defs.' Mot. Summ. J. 14-17; see also Pl.'s Opp'n 13.

Defendants, however, counter that not only did Raab deposit the $45,000 check evidencing the repayment of his $30,000 loan, but that Raab has a history of crossing out words in the memo lines of checks when he disagreed with the contents and by failing to so here, Raab demonstrated his understanding that this check was a repayment of the $30,000.  See Defs.' Proposed Findings of Fact ¶ 37.

Lander, Raab, and two other investors established. See Pl.'s Opp'n 6.

Defendants argue that Raab's $30,000 contribution did not entitle him to an ownership interest, but rather that the money was merely a "loan" to Lander. Defendants contend the loan was secured by the property interest, which was allegedly extinguished when Raab was fully repaid the "loan" with interest and legal fees with the $45,000 check. In other words, the crux of Defendants' argument is that the mortgage and limited partnership mentioned in the Agreement were merely security for the $30,000 Raab loaned Lander. As such, Defendants aver that Lander never created the mortgage or the limited partnership because he repaid the loan with interest and legal fees. Id.

## II. PROCEDURAL HISTORY

On August 28, 2008, Raab filed the complaint alleging six separate counts: (1) Count I for fraud; (2) Count II for breach of contract; (3) Count III for specific performance of the contract; (4) Count IV for accounting; (5) Count V for unjust enrichment; and (6) Count VI for joint venture.

On December 12, 2008, Defendants filed their answer, averring that: (1) Raab misconstrues their obligations, if any, under the Agreement; (2) Raab never was "entitled to an ownership interest of any kind in the Property;" and (3) the Raab Loan was

repaid in full in 2001 when Raab deposited a $45,000 check that Lander had given him.  As an affirmative defense, Defendants argue that, even if the check did not constitute repayment of the $30,000 and even if Defendants had outstanding obligations under the contract, the statutes of limitations for all of Raab's claims have expired prior to Raab filing the instant action.  <u>See</u> Defs.' Mot. Summ. J. 7, 14, 19.

On December 18, 2009, Defendants filed the instant motion for summary judgment, to which Raab responded on January 15, 2010.  On February 1, 2010, Defendants filed a reply.  Defendants' motion for summary judgment is now ripe for adjudication.

**III. LEGAL STANDARD**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The "mere existence" of disputed facts will not result in denial of a motion for summary judgment; rather[,] there must be "a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine"

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather[,] its response must . . . by affidavits or as otherwise provided in [Rule 56] . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

Further, "[s]ummary judgment is appropriate in a contract case where the contract terms are clear and unambiguous, despite disagreement between the parties as to what the agreement provides." Paul Revere Protective Life Ins. Co. v. Weis, 535 F. Supp. 379, 383 (E.D. Pa. 1981), aff'd, 707 F.2d 1403 (3rd Cir. 1982).

**IV. ANALYSIS**

   A.   Applicable Law

"A federal court exercising diversity jurisdiction is obligated to apply state statutes of limitation." Malta v. Schulmerich Carillons, Inc., 1988 U.S. Dist. LEXIS 8426, at *3 (E.D. Pa. 1988) (citing Guaranty Trust Co. v. York, 326 U.S. 99 (1945); see also McGowan v. University of Scranton, 759 F.2d 287, 290 (3d Cir. 1985); Firestone & Parson, Inc. v. Union League, 672 F. Supp. 819, 821 (E.D. Pa. 1987), aff'd, 833 F.2d 304 (3d Cir. 1987)).[7]

In Pennsylvania, pursuant to 42 Pa. C.S. § 5525(a)(7), there is a four-year statute of limitations for:

> [a]n action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument.

42 Pa. C.S. § 5525(a)(7) (2010).[8] Further, where the instrument

---

[7] "The statute of limitations may be raised by a Rule 56(c) motion. When a statute of limitations begins to run is ordinarily a question of fact. When the facts are established, the inquiry becomes a question of law." McCain v. CSX Transp., Inc., 2010 U.S. Dist. LEXIS 40000, at *7-8 (E.D. Pa. Apr. 23, 2010) (citing Dole v. Local 427, 894 F.2d 607, 609 (3d Cir. 1990)) (Robreno, J.).

[8] Pennsylvania courts instruct that "[a]n instrument is a 'note' if it is a promise." 13 Pa. Cons. Stat. Ann. § 3104(e). Article 3 of the Uniform Commercial Code ("UCC") identifies three types of promises that constitute a "note": (1) payable on demand; (2) payable at a definite time; and (3) payable upon demand made before a fixed date. 13 Pa. Cons. Stat. Ann. § 3108; see also Uniform Commercial Code § 3-104(1)(c)). A promise is "payable at a definite time" where it is:

is not payable upon demand, the cause of action for a breach of contract accrues upon "[t]he failure of a party to a contract to perform in accordance with its terms." Christopher v. First Mut. Corp., 2006 U.S. Dist. LEXIS 2255, at *15 (E.D. Pa. Jan. 20, 2006); see also id. ("In a contract case, a cause of action accrues when the breach occurs.") (citing Romeo & Sons v. P.C. Yezbak & Son, 652 A.2d 830, 832 (Pa. 1995)).

Here, where the parties entered into the Agreement whereby Raab lent Defendant money in exchange for an interest (either in the form of a monetary repayment plus interest or, if unpaid within eighteen months, in the form of an ownership interest or limited partnership upon refinancing), § 5525(a)(7) applies as to all of Raab's claims arising from the Agreement.[9]

---

> payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to the rights of (1) prepayment; (2) acceleration; (3) extension at the option of the holder; or (4) extension to a further definite time at the option of the maker or acceptor <u>or automatically upon or after a specified act or event</u>.

13 Pa. Cons. Stat. Ann. § 3108(b) (emphasis added).

Here, the Agreement states that Lander promised to repay Raab's $30,000 loan either in the form of $30,000 plus interest or, if unpaid within eighteen months, in the form of an ownership interest and limited partnership upon refinancing. The Agreement evidences a promise "payable at a definite time" and is, therefore, a note under Art. 3 of the UCC. As such, § 5525(a)(7) applies.

[9] The Court rejects Raab's contentions that the Agreement was a divisible or continuing contract. See Pl.'s Opp'n 5-10.

-11-

Therefore, there is an applicable four-year statute of limitations for Counts I-VI.

However, since the Agreement does not provide payment upon demand,[10] Raab's cause of action accrued from the date Defendants allegedly failed to perform under the terms of the contract.

B.  Discussion

In their motion for summary judgment, Defendants argue that, in accordance with the applicable four-year statute of limitations, all of Raab's claims are time-barred.  See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 306 (3d Cir. 2008)

---

Here, the Agreement is reasonably read as stating that Raab was to loan Lander $30,000 in exchange for repayment plus 6% interest per annum or, if repayment was not made within eighteen months, Raab's 10% ownership interest or formation of a limited partnership would be triggered upon refinancing.  See e.g., Firstbank P.R. v. Jaymo Props. (In re Firstbank P.R.), 2010 U.S. App. LEXIS 9768, *1-2 (3d Cir. May 12, 2010) (finding that a promissory note existed where the transaction included a bank loan in exchange for repayment of a principal sum plus interest and a security executed in the form of a mortgage on particular property); see also note 7, supra.

    [10]    Section 3 of the Agreement provides, in relevant part:

b.    The purpose of Raab Mortgage is to secure the Raab Interest in the Lander Interest.

c.    The Raab Mortgage shall be payable at the time of any refinancing of the Lander Interest or upon any sale of the Lander Interest in the Subject Property.

See Agreement, Defs.' Mot. Summ. J. Ex. A.  Therefore, the Agreement clearly does not provide for payment upon demand.

("In Pennsylvania, a breach of contract claim has a statute of limitations of four years."); see also Allen v. Stewart Title Guar. Co., 2007 U.S. Dist. LEXIS 20846, at *7 (E.D. Pa. Mar. 20, 2007) (noting that the plaintiff's contract claims were time-barred by the applicable four-year statute of limitations, pursuant to 42 Pa. C.S. § 5525). Specifically, Defendants argue that all of Raab's claims have expired because the complaint was filed on August 28, 2008 and (1) the cause of action accrued on January 15, 1998; (2) the discovery rule is not applicable to toll the statute of limitations based on Raab's knowledge on January 15, 1998; and (3) in the alternative, the cause of action accrued, at the latest, on April 2, 2001.

In response, Raab contends that the statutes of limitations have not run on his claims as the causes of actions accrued at different points in time than when Defendants allege. See Pl.'s Opp'n 2. First, Raab argues that the Agreement was a divisible contract, such that the alleged creation of Raab's original ownership interest was separate from Lander's subsequent alleged failure to convert Raab's interest into a partnership interest. See id. at 7. Additionally, Raab argues that the contract was a continuing one, such that he was entitled to waive and has waived any breach by Lander and to wait until the termination of their contractual relationship before the statutes of limitation began running. Id. at 9. Lastly, Raab avers that

Lander is estopped from invoking a statute of limitations defense based on his intentional actions. Plaintiff's arguments have no merit. See note 7, supra.

On August 28, 2008, Raab filed his complaint. Therein, Raab claimed that Defendants did not fully perform their obligations under the Agreement by failing to document and ultimately pay him for his 10% ownership interest that was to be triggered no later than eighteen months following the closing of the Agreement. The parties closed the Agreement on July 15, 1996. As such, the latest date by which Raab's cause of action could begin to accrue for failure to have his alleged 10% interest recognized was January 15, 1998, when Defendants failed to recognize Raab's alleged 10% interest in the Property.

There is no genuine issue of fact as, by this time, Raab was acutely aware of Defendants' failure to document his 10% interest once the eighteen month period had concluded. In fact, he admitted at deposition that he was in constant contact with Defendants from 1996 through 2001, seeking fulfillment of this alleged obligation.[11] Therefore, where Raab failed to initiate

---

[11] Specifically, Raab testified that:

Q: And that at that time [of the refinancing] Mr. Lander was to perform his obligations, all of them, under Paragraph 4 and all its subparts? . . .

A: Yes. . . .

Q: The refinancing that you understood this to be

this action until August 28, 2008, as a matter of law his claims are time-barred, pursuant to § 5525(a)(7).

However, two exceptions to a rigid application of a statute of limitations that may toll the applicable time period exist. Neither of the applicable exceptions apply here.

1. <u>Discovery Rule</u>

A statute of limitations may be tolled by the discovery rule exception. Under the "discovery rule," the accrual of

---

> referring to, did you at any time between 1996 and 2001 ask Mr. Lander if that refinancing had occurred?
>
> A: Only thing I asked Mr. Lander a million times was when we were going to – when will I - when will it be documented my interest in 10th and South. . . .
>
> Q: And did that occur on more than one occasion between 1996 and 2001?
>
> A: It happened every time we met.
>
> Q: So could you approximate how many times that happened between 1996 and 2001.
>
> A: I would say between phone calls, at least three, four times a month.
>
> Q: And what was his response?
>
> A: Either his account – first we were going to meet with his accountant or accountant/lawyer, I don't know, accountant, and he always gave me "my records are a mess, I'm confused." He had always 20 million excuses. And he says, let me get back to you, and I'll get back to you and I'll get back to you. And he never addressed the issue.

<u>See</u> Raab Dep. 260:1-261:22.

-15-

Raab's claims may be delayed based on Defendants' fraudulent conduct that delayed Raab's ability to know of his injury or, through the exercise of reasonable diligence, "discover" his injury. Compuwill Express, Inc. v. ATX Telcomms. Servs., 2000 U.S. Dist. LEXIS 7303, *32 (E.D. Pa. May 31, 2000); see also Burtch v. Ganz, 282 B.R. 805, 820 n.13 (E.D. Pa. 2002) (Robreno, J.) (noting that "[t]he discovery rule is the same under both Pennsylvania and federal common law" because whether a party has acted diligently for purposes of the discovery rule may be determined as a matter of law where the facts are so clear that reasonable minds cannot differ (citing Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991))).[12]

The "discovery rule" is inapplicable to the case at bar for several reasons. First, as discussed above, Raab was aware that his expectation of repayment (allegedly in the form of an ownership interest) was not being documented by Defendants upon his request as early as 1996. See note 10, supra. Upon his own due diligence, Raab learned that Defendants were not fulfilling what Raab believed he was obligated under the Agreement. Second, when Defendants failed to refinance the lease and failed to give

---

[12] "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." Hayward v. Med. Ctr., 608 A.2d 1040, 1043 (Pa. 1992) (internal citations omitted).

Raab his alleged 10% interest in the Property on January 15 (eighteen months following the July 15, 1996), Defendants were, at least in Raab's mind, in breach of the contract.  Therefore, even under Raab's version of the facts, there is no genuine issue of material fact that as early as January 15, 1998, Raab was on notice of his injury and January 15, 1998 is thus the date the cause of action began to accrue for purposes of the discovery rule.[13]

    2.  <u>Estoppel</u>

Lastly, Raab argues that Defendants are estopped from asserting a statute of limitations defense whereby they gave Raab a check to thwart him from recognizing that there was a termination of the contractual relationship.  <u>See</u> Pl. Opp'n 13.  Therefore, Raab asserts that he believed he could deposit the $45,000 check on April 2, 2001 and still have a continued

---

[13]    Further, it is axiomatic that Raab now claims that he was waiting for Defendants' acknowledgment of his 10% interest and that he believed the April 2, 2001 check he received and deposited was a distribution, not a repayment of the loan that would extinguish his interest.  <u>See</u> <u>id.</u> 18; <u>see also</u> Raab Dep. 279:7-280:5.

    Even were the Court to accept Raab's averments as true, where Raab received a check on April 2, 2001, over three years following the Agreement's date of mandatory refinancing within eighteen months of the signing (at which point Raab's ownership interest would be realized), Raab was on notice of Defendants' potential breach of contract as no refinancing had occurred.  As such, even if the Court considered April 2, 2001 as the date from which Raab's cause of action began to accrue, the discovery rule's tolling exception would not save his claims from being time-barred.

ownership interest in the Property since the memo line of the check didn't not explicitly reference "Whole Foods" or repayment "with interest." Id.

In Pennsylvania, "courts will estop a defendant from raising the statute of limitations defense if plaintiff proves by clear and convincing evidence, that defendant affirmatively concealed the plaintiff's cause of action." Actor v. First Investors Corp., 1985 U.S. Dist. LEXIS 12501, *8 (E.D. Pa. Dec. 20, 1985) (citing Commonwealth of Penn. Dept. of Public Welfare v. UEC, Inc., 483 Pa. 503, 397 A.2d 779, 784 (1979)).

Here, Raab, again by his own admission, stated that he believed Defendant Lander was not providing documentation of an ownership interest to which he was entitled and began requesting as early as 1996. Those actions do not support a finding that Defendants actively hid Raab's claims from him.

Further, Raab was on notice, at least as early as January 15, 1998, that he did not receive a 10% ownership interest within eighteen months of the closing of the Agreement. In fact, though Raab alleges Lander stated that he was "confused" when being questioned about Raab's 10% interest in 1996 through 2001, no reasonable jury could find that Defendants actively hid his causes of action, especially considering Defendants, in 2001, sent him a $45,000 check evidencing an attempt to repay the $30,000 loan with interest and legal fees. Under these circumstances, the Court cannot find that Defendants

"affirmatively concealed" Raab's cause of action and estoppel is not appropriate here.

**V.    CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment will be granted and Counts I, II, III, IV, V, and VI are dismissed.  An appropriate order will follow.